IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE

| | |
|---|---|
| Tevin Tipps, <br><br> Plaintiff, <br><br> v. <br><br> Turner & Townsend, Inc. and <br> Eli Lilly and Company <br><br> Defendants. | **Civil Action No: 3:24-cv-698** <br><br> **Jury Trial Demanded** |

# COMPLAINT

Plaintiff, Tevin Tipps ("Plaintiff" or "Mr. Tipps"), by and through counsel undersigned, brings this Complaint against Defendants Turner and Townsend, Inc. ("T&T") and Eli Lilly and Company ("Lilly"), (collectively "Defendants") as follows:

## PRELIMINARY STATEMENT

1. Mr. Tipps brings this action against Defendants, for violations of the Americans with Disabilities Act of 1990 ("ADA") as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §§ 12101 to 12213 (collectively, the "ADA"), the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. §2000e-2(a)(1), Retaliation, 42 U.S.C. §2000e3, the North Carolina Equal Employment Practices Act (N.C. Gen. Stat. §§ 143-422.1 to 143-422.3) and Wrongful Discharge in Violation of Public Policy.

2. Mr. Tipps is an African American male who was hired by T&T in August 2022 at the Associate Director level.

3. T&T assigned Mr. Tipps as a Project Controls Manager on a manufacturing project for one of T&T's clients, Lilly, a pharmaceutical company, located in Concord, North Carolina.

4. Lilly had stated a preference for all employees, including T&T's, to work on-site.

5. T&T made a commitment to Lilly that its employees would work on-site.

6. After working for several months, Mr. Tipps's physician requested that his employer grant several reasonable accommodations in connection with his recent cancer diagnosis.

7. One of the reasonable accommodation requests was to allow Mr. Tipps to work from home as a reasonable accommodation.

8. Following Mr. Tipps' request, T&T contacted Lilly to schedule a meeting to discuss Mr. Tipps' role.

9. During the meeting, Lilly requested that Mr. Tipps be removed from the project due to alleged performance issues.

10. Mr. Tipps had no documented performance issues during his employment.

11. T&T removed Mr. Tipps from the Lilly project and placed him on administrative leave allegedly until it could place him on another project.

12. In response to his placement on administrative leave, Mr. Tipps filed charges with the Equal Employment Opportunity Commission ("EEOC") against both T&T and Lilly.

13. Despite applying for multiple positions for which he was qualified, T&T did not place Mr. Tipps into another position and eventually terminated his employment.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under Titles I and V of the Americans with Disabilities Act.

15. This Court has personal jurisdiction over Defendants, because it, at all times material, continuously conducted business in Cabarrus County, North Carolina.

16. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendant resides in this district and all defendants reside in North Carolina, and 28 U.S.C. § 1391(b)(2), in that a substantial part of the events and omissions giving rise to the claim occurred in this district.

## CONDITIONS PRECEDENT

17. On July 3, 2023, Mr. Tipps timely filed charges, alleging discrimination based on disability and retaliation, with the Equal Employment Opportunity Commission's ("EEOC") Charlotte District Office located at 129 West Trade Street, Suite 400, Charlotte, NC 28202, against Turner & Townsend, Inc. (EEOC Charge Number 520-2023-03062) and Eli Lilly and Company (EEOC Charge Number 430-2023-03101) (See Ex. 1 and Ex. 2).

18. On April 30, 2024, the Charlotte District EEOC office issued Notice of Right to Sue letters for both charge numbers. This Complaint has been filed within 90 days of receipt of those letters. (See Ex. 3 and Ex. 4).

## PARTIES

19. Plaintiff, Tevin Tipps resides in Huntersville, North Carolina and was an employee of Defendant, T&T between August 2022 and February 7, 2024. Mr. Tipps was a joint employee of Defendant Lilly between August 2022 and February 27, 2023. At all times relevant to this Complaint, Plaintiff was a North Carolina resident and citizen under the jurisdiction of this Court.

20. At all times relevant to this Complaint, Defendant, T&T has been a multinational professional services company registered as a foreign entity with the North Carolina Secretary of State. Based on information and belief, Mr. Tipps was hired by T&T's office located at 285 Madison Avenue, 22nd Floor, New York, New York 10017. At all times relevant to this Complaint T&T conducted business in the State of North Carolina and was Mr. Tipps' employer within the meaning of the common law of the State of North Carolina. T&T regularly employed more than 500 employees at all times relevant to this Complaint.

21. At all times relevant to this Complaint, Defendant, Lilly has been a pharmaceutical company registered as a foreign entity with the North Carolina Secretary of State. Lilly's headquarters is located at Lilly Corporate Center, Indianapolis, Indiana 46285. At all times relevant to this Complaint Lilly conducted business in the State of North Carolina. Lilly regularly employed more than 500 employees at all times relevant to this Complaint. At all times relevant to this Complaint, Lilly was a joint employer of Mr. Tipps as defined by 29 C.F.R. § 791.2.

## FACTUAL ALLEGATIONS

22. Plaintiff, Mr. Tipps, is a 53-year-old African American male.

23. On or about August 8, 2022, T&T hired Mr. Tipps as a Project Controls Manager based out of Charlotte, North Carolina.

24. T&T assigned Mr. Tipps to work on a substantial manufacturing project for its client, Lilly, at Lilly's facility located in Concord, North Carolina.

25. Based on information and belief, Lilly had final approval authority on the placement of Mr. Tipps and other T&T employees who were hired at its Concord, North Carolina worksite.

26. Based on information and belief, Lilly provided and/or controlled the facilities where T&T employees worked.

27. Lilly preferred that all T&T employees work on the job site instead of remotely.

28. The ability to work on-site was not an essential function of Mr. Tipps' job and T&T did not include the ability to work on-site as a requirement in the Project Controls Manager job description.

29. Mr. Tipps could perform the essential functions of his job remotely.

30. T&T committed to Lilly that T&T employees would work on-site at Lilly's Concord, North Carolina facility.

31. Based on information and belief, T&T believed that its commitment to keeping its employees "boots on ground" or working onsite at the Concord, North Carolina

worksite was essential to its continued good standing and contractual relationship with Lilly.

32. Still, T&T and Lilly occasionally allowed T&T employees to work from home due to space limitations, weather conditions, or due to business needs.

33. Based on information and belief, Lilly expected T&T employees to obtain permission from Lilly before working from home or at least provide notice that they would work from home.

34. Lilly had authority to remove T&T employees from the Concord, North Carolina project.

35. Several weeks after starting his employment, Mr. Tipps revealed to T&T that he had been diagnosed with cancer.

36. Mr. Tipps' medical condition and treatment substantially limited major life activities such as sleeping, walking, standing, and lifting, among others.

37. Mr. Tipps' medical condition and treatment also substantially impacted major bodily functions including his immune system, digestive system, bowel, and bladder.

38. Mr. Tipps asked to work from home as a reasonable accommodation from January 30, 2023 through February 6, 2023, and from February 6, 2023 through February 15, 2023.

39. T&T granted both requests.

40. Each time that T&T approved Mr. Tipps' request to work from home as a reasonable accommodation, the company first obtained clearance from Lilly to allow Mr. Tipps to work from home.

41. On or about February 15, 2023, Mr. Tipps informed T&T that his doctor was requesting an extension of his work-from-home accommodation for two (2) days per week through March 29, 2023.

42. In addition, Mr. Tipps' doctor requested he be provided the following reasonable accommodations: a desk close to a restroom, an executive chair that provides relief and support, rest periods as needed to recover and the ability to maintain medical supplies.

43. The doctor also requested that Mr. Tipps be allowed to work a modified schedule while in the office (9:00 a.m. – 4:00 p.m.) that allowed him to work from home the remainder of the day based on his commute length to total eight (8) hours.

44. The next day, February 16, 2023, Mr. Tipps' supervisor, Perry Knight ("Knight"), sent emails to Lilly requesting a meeting to discuss Mr. Tipps' position.

45. In the emails, Knight stated, "It's important that we speak this week if you can spare time." Knight also stated, "(T)he situation is quite sensitive so I'd like to check in with you if you can spare the time." (See Ex. 5)

46. On or about February 17, 2023, Mr. Tipps' doctor provided a written request for an extension of the reasonable accommodations discussed on February 15, 2023.

47. On February 21, 2023, Mike Kelly from T&T's Human Resources Department told Mr. Tipps that he would partner with Lilly as part of the interactive dialogue to see if the extension could be accommodated.

48. On or about February 21, 2023, T&T met with Lilly to discuss Mr. Tipps' role.

49. During the February 21, 2023 meeting, Lilly told T&T that Mr. Tipps should be removed from the project due to alleged performance issues.

50. Mr. Tipps received no documented performance issues from either T&T or Lilly before or after the February 21, 2023 meeting.

51. On or about February 27, 2023, T&T told Mr. Tipps that he was being removed from the Lilly project.

52. T&T placed Mr. Tipps on its Availability List for new projects after it removed him from the Lilly project.

53. On or about March 8, 2023, Mr. Tipps formally complained to T&T of unlawful discrimination due to his disability and retaliation due to his protected activity of requesting reasonable accommodations.

54. Based on information and belief, Defendants did not terminate other employees outside of Mr. Tipps' protected class because they worked from home or requested to work from home.

55. Mr. Tipps applied for multiple positions after being placed on T&T's Availability List but was not selected for any projects.

56. T&T terminated Mr. Tipps' employment on or about February 7, 2024.

## CLAIMS FOR RELIEF

**COUNT I – Unlawful Discrimination and Failure to Provide a Reasonable Accommodation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12111 *et seq.***

57. Mr. Tipps repeats and realleges paragraphs 1 – 56 as if fully set forth herein.

58. Mr. Tipps is disabled and a member of a protected class.

59. Mr. Tipps qualified as an individual with a disability as defined by the ADA.

60. Mr. Tipps was diagnosed with a condition that substantially limits one or more major life activities.

61. Mr. Tipps had a record of physical impairment that substantially limits one or more major life activities.

62. T&T had notice of Mr. Tipps' disability.

63. Based on information and belief, T&T informed Defendant Lilly of Mr. Tipps' condition and/or his workplace restrictions and requested accommodations from his medical provider.

64. Specifically, Mr. Tipps' medical provider requested, among other things, that he work from home two days a week as a reasonable accommodation.

65. Lilly preferred that all T&T employees work on-site.

66. Lilly requested that Mr. Tipps be removed from the Concord, North Carolina project due to alleged performance issues, and T&T obliged by removing him from the project.

67. Mr. Tipps could perform the essential functions of his job with a reasonable accommodation.

68. Defendants could have allowed Mr. Tipps to work from home as a reasonable accommodation without undue hardship.

69. Mr. Tipps was meeting Defendants' legitimate expectations at the time of his removal from the project.

70. Mr. Tipps was treated less favorably than individuals outside of his protected class.

71. Mr. Tipps suffered damages as a result of Defendants' unlawful actions including past and future lost wages and benefits, emotional distress, and the costs of bringing this action.

72. Defendants intentionally violated Mr. Tipps' rights under the ADA with malice or reckless indifference, and as a result, are liable for punitive damages.

**COUNT II – Unlawful Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12203 *et seq*.**

73. Mr. Tipps repeats and realleges paragraphs 1 – 72 as if fully set forth herein.

74. Mr. Tipps was qualified for the position when Defendants fired him.

75. Mr. Tipps engaged in protected activity when he requested to work-from-home as a reasonable accommodation.

76. Mr. Tipps suffered an adverse employment action when he was removed from the Concord North Carolina project, placed on administrative leave, and eventually terminated from his employment.

77. Defendants' alleged reason for removing Mr. Tipps from the project is pretextual.

78. T&T discharged or constructively discharged, and otherwise retaliated against Mr. Tipps because he engaged in protected activity by requesting reasonable accommodations and opposed unlawful discrimination due to his disability.

79. A causal connection exists between Mr. Tipps' protected activity of requesting a reasonable accommodation and the adverse employment action of his removal from the Concord, North Carolina project.

80. A causal connection exists between Mr. Tipps' protected activity of complaining of discrimination based on his disability and retaliation, and T&T's adverse employment actions of failing to place him on another project and terminating his employment.

81. Mr. Tipps suffered damages as a result of Defendants' unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

82. Defendants intentionally violated Mr. Tipps' rights with malice or reckless indifference to his federally protected rights, and as a result, are liable for punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

A. Accept jurisdiction over this matter;

B. Award Plaintiff damages for past and future loss of wages and benefits, plus pre-judgment and post-judgment interest, as appropriate by law;

C. Award Plaintiff compensatory and punitive damages;

D. Award Plaintiff damages for emotional distress;

E. Award to Plaintiff all costs, expert witness fees, and reasonable attorneys' fees incurred in connection with this action;

F. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated: July 29, 2024　　　　　　　　　Respectfully Submitted:

**Madison Law, PLLC**
/s/ *Kirton M. Madison*
Kirton M. Madison,
North Carolina State Bar No. 43029
8936 Northpointe Executive Park Drive
Suite 240-260
Huntersville, NC 28078
Telephone: (704) 981-2790
Facsimile: (704) 930-0648
kmadison@madlawpllc.com
*Attorney for Plaintiff, Tevin Tipps*